**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:10-CV-21943-ASG**

**AMERICAN RESIDENTIAL EQUITIES, LLC,**

**Plaintiff,**

**vs.**

**GMAC MORTGAGE, LLC, successor by merger to GMAC Mortgage Corporation,**

**Defendant.**
______________________________________/

## DEFENDANT GMAC MORTGAGE, LLC'S ANSWER AND COUNTERCLAIM

**COMES NOW** Defendant, GMAC Mortgage, LLC ("Defendant" or "GMACM"), by and through its undersigned counsel, and hereby submits its Answer to Plaintiff American Residential Equities, LLC's ("Plaintiff") Complaint as follows:

## FIRST DEFENSE

For its response to the specifically enumerated paragraphs of Plaintiff's Complaint, Defendant states as follows:

### Parties, Jurisdiction and Venue

1. Defendant denies it breached any contract and further denies that Plaintiff is entitled to any damages, specific performance, or other relief whatsoever and demands strict proof thereof.

2. Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 2 of the Complaint and therefore denies them and demands strict proof thereof.

3. Defendant admits the allegations in Paragraph 3 of the Complaint.

4. Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 4 of the Complaint and therefore denies them and demands strict proof thereof.

5. Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 5 of the Complaint and therefore denies them and demands strict proof thereof.

## General Allegations

6. Defendant states that the allegations in Paragraph 6 of the Complaint are not directed at Defendant and therefore no response is required. To the extent a response is required, Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 6 of the Complaint and therefore denies them and demands strict proof thereof

7. Defendant states that the allegations in Paragraph 7 of the Complaint are not directed at Defendant and therefore no response is required. To the extent a response is required, Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 7 of the Complaint and therefore denies them and demands strict proof thereof.

8. Defendant admits the allegations in Paragraph 8 of the Complaint.

9. Defendant states that the Servicing Agreement attached as Exhibit 1 to Plaintiff's Complaint is a written document that speaks for itself.

10. Defendant states that the documents attached as Exhibit 2 to Plaintiff's Complaint are written documents that speak for themselves.

11. Defendant denies the allegations in Paragraph 11 of the Complaint, including subparts (a) through (i), and demands strict proof thereof.

12. Defendant denies the allegations in Paragraph 12 of the Complaint and demands strict proof thereof.

13. Defendant states that the Letter attached as Exhibit 3 to Plaintiff's Complaint is a written document that speaks for itself.

14. Defendant states that the Letter attached as Exhibit 4 to Plaintiff's Complaint is a written document that speaks for itself.

15. Defendant admits that it was contacted by the borrower, Cornelius Heckstall, regarding the possibility of a loan modification. Defendant states that the May 2009 Letter attached as Exhibit 4 to Plaintiff's Complaint is a written document that speaks for itself. Defendant denies the remaining allegations in Paragraph 15 of the Complaint and demands strict proof thereof.

16. Defendant denies the allegations in Paragraph 16 of the Complaint and demands strict proof thereof.

17. Defendant admits that Plaintiff approved Mr. Heckstall's request for a loan modification. Defendant states that the May 2009 Letter attached as Exhibit 4 to Plaintiff's Complaint is a written document that speaks for itself. Defendant denies the remaining allegations in Paragraph 17 of the Complaint and demands strict proof thereof.

18. Defendant admits that Plaintiff improperly requested an audit of Defendant's books and records. Defendant lacks sufficient information or knowledge to admit or deny the

remaining allegations in Paragraph 18 of the Complaint and therefore denies them and demands strict proof thereof

19. Defendant admits that it lawfully refused Plaintiff's improper audit request.

20. Defendant admits that it lawfully refused Plaintiff's improper audit request. Defendant denies the remaining allegations in Paragraph 20 of the Complaint and demands strict proof thereof.

21. Defendant states that the Letter attached as Exhibit 5 to Plaintiff's Complaint is a written document that speaks for itself.

22. Defendant states that the Letter attached as Exhibit 5 to Plaintiff's Complaint is a written document that speaks for itself.

23. Defendant states that the Servicing Agreement attached as Exhibit 1 to Plaintiff's Complaint and the Letter attached as Exhibit 5 to Plaintiff's Complaint are written documents that speaks for themselves.

24. Defendant denies the allegations in Paragraph 24 of the Complaint and demands strict proof thereof.

**COUNT I**
**(Breach of Contract)**

25. Defendant adopts its responses to Paragraphs 1 through 24 of the Complaint as if fully set forth herein.

26. Defendant denies the allegations in Paragraph 26 of the Complaint and demands strict proof thereof.

27. Defendant denies the allegations in Paragraph 27 of the Complaint and demands strict proof thereof.

28. Defendant denies the allegations in Paragraph 28 of the Complaint, including subparts (a) through (m), and demands strict proof thereof.

29. Defendant denies the allegations in Paragraph 29 of the Complaint and demands strict proof thereof.

In response to the "WHEREFORE" paragraph following Paragraph 29 of the Complaint, Defendant denies Plaintiff is entitled to any compensatory damages, interest, fees, costs, or other relief whatsoever and demands strict proof thereof.

**COUNT II**
**<u>(Specific Performance)</u>**

30. Defendant adopts its responses to Paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31. Defendant denies that Plaintiff is entitled to any specific performance or other relief whatsoever and demands strict proof thereof.

32. Defendant denies the allegations in Paragraph 32 of the Complaint and demands strict proof thereof.

33. Defendant admits that it lawfully refused Plaintiff's improper audit request.

34. Defendant denies the allegations in Paragraph 34 of the Complaint and demands strict proof thereof.

35. Defendant denies the allegations in Paragraph 35 of the Complaint and demands strict proof thereof.

In response to the "WHEREFORE" paragraph following Paragraph 35 of the Complaint, Defendant denies Plaintiff is entitled to any specific performance, judgment, fees, costs, or other relief whatsoever and demands strict proof thereof.

Defendant denies each and every allegation not specifically admitted herein.

**SECOND DEFENSE**

Defendant avers the affirmative defenses of statute of frauds, estoppel, waiver, release, justification, ratification, acquiescence, mistake, consent, notice and laches.

**THIRD DEFENSE**

Defendant denies that Plaintiff has been injured or damaged by Defendant and demands strict proof thereof.

**FOURTH DEFENSE**

Plaintiff's claims are, in whole or in part, preempted by applicable law.

**FIFTH DEFENSE**

Plaintiff's own negligence proximately caused any alleged injuries and damages.

**SIXTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, pursuant to the applicable statutes of limitations.

**SEVENTH DEFENSE**

Plaintiff has not complied with conditions precedent or legal requirements necessary to maintain this action.

**EIGHTH DEFENSE**

Defendant denies the material allegations of the Complaint and demands strict proof thereof.

**NINTH DEFENSE**

Defendant pleads the general issue.

**TENTH DEFENSE**

No action by Defendant was the actual or proximate cause of injury to Plaintiff.

**ELEVENTH DEFENSE**

Plaintiff's claims are barred by the terms and conditions of the contracts that are the subject to this lawsuit.

**TWELFTH DEFENSE**

If an arbitration provision exists in any contract governing the claims made the basis of the Complaint, Defendant contends that the claims set forth against it should be referred to binding arbitration.

**THIRTEENTH DEFENSE**

Plaintiff has failed to mitigate its alleged damages.

**FOURTEENTH DEFENSE**

Defendant avers that its actions and conduct with respect to each contract or transaction was justified.

**FIFTEENTH DEFENSE**

Some or all of the claims asserted are barred by Plaintiff's lack of due diligence.

**SIXTEENTH DEFENSE**

Defendant asserts that there were legitimate, good faith business reasons for the acts alleged.

**SEVENTEENTH DEFENSE**

Defendant avers that it acted in accordance with industry standards at all material times.

**EIGHTEENTH DEFENSE**

Some or all of the Plaintiff's claims are barred by one or more of the doctrines of parole evidence, merger and integration.

**NINETEENTH DEFENSE**

Plaintiff's claims are barred in whole or in part by Plaintiff's own actions or inactions.

**TWENTIETH DEFENSE**

Some or all of the claims asserted are barred by the written terms of the contracts themselves.

**TWENTY-FIRST DEFENSE**

Defendant has complied with all relevant federal and state requirements regarding the transactions that are the subject of this lawsuit.

**TWENTY-SECOND DEFENSE**

Plaintiff's claims are barred pursuant to the doctrine of unclean hands.

**TWENTY-THIRD DEFENSE**

The Complaint fails to state a claim upon which relief may be granted.

**TWENTY-FOURTH DEFENSE**

Plaintiff's claims are barred because its claims are lacking in equity.

**TWENTY-FIFTH DEFENSE**

Plaintiff's claims are barred because Plaintiff has an adequate remedy at law.

**TWENTY-SIXTH DEFENSE**

Some or all of the claims asserted are barred by Plaintiff's contributory negligence, assumption of the risk, or both.

**TWENTY-SEVENTH DEFENSE**

Defendant denies any liability for the acts of other entities under a theory of *respondeat superior*, vicarious liability, agency, or otherwise.

**TWENTY-EIGHTH DEFENSE**

Plaintiff's claims are barred because it has not performed its parts of the agreements and contracts at issue in this case.

**TWENTY-NINTH DEFENSE**

Defendant has, at all times relevant hereto, complied with all applicable laws, regulations, and standards, and the claims asserted by Plaintiff are, therefore, preempted under state and/or federal laws.

**THIRTIETH DEFENSE**

Plaintiff is not entitled to a trial by jury pursuant to the express terms of the contracts at issue in this case.

**THIRTY-FIRST DEFENSE**

Plaintiff's claim for damages in whole or in part is barred pursuant to the express terms of the contracts at issue in this case.

**THIRTY-SECOND DEFENSE**

At the time this Answer is filed, Defendant has not obtained discovery from Plaintiff. Accordingly, Defendant reserves its rights to amend its Answer to assert such supplemental or additional defenses as are appropriate upon the completion of discovery.

## COUNTERCLAIM FOR INJUNCTIVE AND OTHER RELIEF

**COMES NOW** Defendant/Counterclaim Plaintiff GMAC Mortgage, LLC ("GMACM"), by and through its undersigned counsel, and hereby submits its Counterclaim against Plaintiff/Counterclaim Defendant American Residential Equities, LLC ("ARE") as follows:

## FACTUAL BACKGROUND

1. On or about July 29, 2004, GMACM and ARE entered into a Servicing Agreement whereby GMACM, in exchange for certain representations and warranties by ARE, agreed to service and administer various mortgage loans owned by ARE. (Exh. 1 to Doc. 4).

2. Said Servicing Agreement was subsequently amended on five different occasions. (Exh. 2 to Doc. 4).

3. The Servicing Agreement and the subsequent amendments are collectively referred to herein as "the Servicing Agreement" or "the Agreement."

4. In sum, the Agreement provides that GMACM shall service and administer all mortgage loans subject to the Agreement by, among other things, (a) collecting principal, interest, and escrow payments, (b) ensuring that taxes on the subject properties are current and paid for, (c) ensuring that insurance on the subject properties is provided and paid for, (d) initiating foreclosure proceedings when necessary, and (e) maintaining, preserving, marketing, and selling Real Estate Owned (REO) property. (*See generally* Exhs. 1 & 2 to Doc. 4).

5. In exchange, ARE agreed to pay GMACM a servicing fee and reimburse GMACM for advances made and expenses incurred in connection with the servicing of the subject mortgage loans. (*See generally* Exhs. 1 & 2 to Doc. 4).

6. Particularly, in regard to ARE's obligations to reimburse GMACM for advances made and expenses incurred in connection with the servicing of the mortgage loans, Section 3.03

of the Servicing Agreement provides, in relevant part, that "[GMACM] shall be entitled to first priority reimbursement . . . for Servicing Advances from recoveries from the related Mortgagor or from all Liquidation Proceeds and other payments or recoveries (including Insurance Proceeds and Condemnation Proceeds) with respect to the related Mortgage Loan." (Exh. 1 to Doc. 4, § 3.03).

7. The Agreement defines "Servicing Advances" as "[a]ll customary, reasonable and necessary 'out of pocket' costs and expenses (including reasonable attorneys' fees and disbursements) incurred in the performance by [GMACM] of its servicing obligations, including, but not limited to, the cost of (a) the preservation, restoration and protection of the Mortgaged Property, (b) any fees relating to any enforcement or judicial proceedings, excluding foreclosures, (c) foreclosure actions per FHLMC attorney fees and costs guidelines, (d) the management and liquidation of the Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage, (e) taxes, assessments, water rates, sewer rents and other charges which are or may become a lien upon the Mortgaged Property and (f) compliance with the obligations pursuant to the provisions of this Agreement." (Exh. 1 to Doc. 4, § 1.01).

8. In this same vein, the Agreement further provides that ARE shall reimburse GMACM for, among other things, "(i) any out-of-pocket expense [GMACM] incurs with the prior approval of [ARE] in connection with its servicing and administrative obligations set forth in this Agreement to the extent such expense is not ordinary to the servicing function . . . (ii) expenses that [ARE] has expressly agreed to pay or be liable for hereunder; and (iii) expenses incurred in connection with the performance by [GMACM] at the request of [ARE] of any activity that is not specifically required to be performed by [GMACM] under this Agreement and

is not reasonably ancillary to any specific requirements of [ARE] under this Agreement." (Exh. 1 to Doc. 4, § 4.08(b)).

9. And, in the event of a termination of the Agreement and a transfer of the loans to a successor servicer, the Agreement provides that "[GMACM] shall be entitled to be reimbursed for all unreimbursed Servicing Advances and any other advances made by the Servicer pursuant to this Agreement with respect to any Mortgage Loan on the related Transfer Date, but only if the servicer after the related Transfer Date is not the Servicer or an Affiliate. In addition, the Owner shall cause the Servicer to be reimbursed for any accrued and unpaid Servicing Fees and for any trailing expenses representing Servicing Advances for which invoices are received by the Servicer after the Transfer Date . . . ." (Exh. 1 to Doc. 4, § 6.02(b)).

10. The Agreement also includes a comprehensive confidentiality provision. Said provision provides that ARE shall not disclose or disseminate, among other things, any "information relating in any way to the customer and/or prospective client" and that any such breach of this provision shall "result in immediate and irreparable harm and that any remedies at law . . . [would] be inadequate." (Exh. 1 to Doc. 4, § 13.05).

11. Upon execution of the Servicing Agreement, GMACM began to diligently service and administer each of the mortgage loans subject to the Agreement.

12. In so doing, and pursuant to the express terms of the parties' Servicing Agreement, GMACM advanced funds and incurred expenses in its efforts to properly service the mortgage loans for ARE.

13. GMACM advanced funds and incurred expenses for, among other things, property inspections, property taxes, insurance, Broker Price Opinions, securing and un-securing

properties, snow services, foreclosure fees and services, lawn cuts and yard maintenance, utilities, and litigation expenses.

14. Throughout the course of the parties' relationship, ARE continually neglected its obligations under the Servicing Agreement.

15. Due in large part to the souring of the parties' relationship and ARE's failure to honor the terms of the Agreement, on April 20, 2009, GMACM notified ARE of its intent to terminate the parties' Servicing Agreement "effective the earlier of (i) July 31, 2009 or (ii) such other date as ARE notifies GMACM that a successor servicer has assumed GMACM's responsibilities and obligations." A copy of the April 20, 2009 Termination Notice is attached hereto as Exhibit "A".

16. ARE subsequently requested that GMACM extend the date in which the termination of the Servicing Agreement became effective.

17. Accordingly, on May 1, 2009, GMACM sent another termination notice to ARE, providing that "GMACM intends to terminate the Servicing Agreement effective the earlier of (i) November 30, 2009 or (ii) such other date as ARE notifies GMACM that a successor servicer has assumed GMACM's responsibilities and obligations." A copy of the May 1, 2009 Termination Notice is attached hereto as Exhibit "B".

18. Despite the fact that GMACM provided ARE with sufficient notice of the termination of the parties' Servicing Agreement and ARE's need to locate a successor servicer, ARE failed to timely locate a successor servicer.

19. Indeed, it was not until April 2010 until ARE provided GMACM with notice that the loans subject to the Agreement would be transferred to Acqura Loan Services.

20. Pursuant to ARE's instructions, the loans encompassed by the Agreement were subsequently transferred to Acqura Loan Services on May 3, 2010.

21. Both before and after the above-referenced transfer, GMACM demanded that ARE reimburse GMACM for all expenses and advancements made in connection with the servicing of the subject mortgage loans.

22. However, to date, ARE has completely and utterly failed to reimburse GMACM for the outstanding expenses and advancements made in connection with the servicing of the subject mortgage loans.

23. Furthermore, subsequent to GMACM's transfer of the mortgage loans encompassed by the parties' Servicing Agreement, ARE has made and published numerous false statements regarding GMACM.

24. Said false statements include, but are not limited to, statements that GMACM systematically mismanaged loans and properties in ARE's portfolio, failed to complete the simplest activities required of mortgage servicing companies, disregarded ARE's instructions, ignored ARE's requests for reports, and jeopardized ARE's assets.

25. Not only did ARE make and publish numerous false statements, but it also made and published confidential and proprietary customer information in violation of the parties' Servicing Agreement.

26. Specifically, in a recent press release sent out in conjunction with the filing of the Complaint in the above-styled action, ARE alleged that "GMAC pressured the company to offer a second modification to Cornelius Heckstall, despite the fact that he had failed to make payments according to an earlier loan modification with identical terms." A copy of the Press Release is attached hereto as Exhibit "C". In said press release, Jeffrey Kirsch, president and

CEO of ARE, went on to state that "[w]hile GMAC repeatedly neglected the assets in our portfolio, they appeared to bend over backwards for Rep. Heckstall's brother[;] [w]e bowed to the pressure because it gave us more time to find a competent replacement servicing company." (Exh. C).

**COUNT I**
**(Breach of Contract)**

27. GMACM adopts and incorporates by reference all allegations made in Paragraphs 1-23 of this Counterclaim as if fully stated herein.

28. The parties' Servicing Agreement is/was a valid and binding contract by and between GMACM and ARE.

29. At all times material herein, GMACM complied with its obligations under the terms of the Servicing Agreement.

30. ARE has materially breached the Agreement by failing and/or refusing to reimburse GMACM for expenses incurred and advances made in connection with the servicing of the mortgage loans subject to the Agreement.

31. Said advances and expenses include, but are not limited to, funds provided for property inspections, property taxes, insurance, Broker Price Opinions, securing and un-securing properties, snow services, foreclosure fees and services, lawn cuts and yard maintenance, utilities, and litigation expenses.

32. ARE has breached the parties' Servicing Agreement by failing to timely provide GMACM with a successor servicer after termination of the parties' relationship.

33. ARE has further breached the Agreement by continually neglecting its obligations under the Servicing Agreement.

34. ARE has also breached the Agreement by disclosing and disseminating confidential customer information regarding Cornelius Heckstall's mortgage loan – a customer and mortgage loan subject to the parties' Servicing Agreement. In a recent press release, ARE alleged that "GMAC pressured the company to offer a second modification to Cornelius Heckstall, despite the fact that he had failed to make payments according to an earlier loan modification with identical terms." (Exh. C). In said press release, Jeffrey Kirsch, president and CEO of ARE, went on to state that "[w]hile GMAC repeatedly neglected the assets in our portfolio, they appeared to bend over backwards for Rep. Heckstall's brother[;] [w]e bowed to the pressure because it gave us more time to find a competent replacement servicing company." (Exh. C).

35. Indeed, ARE's inclusion of allegations in its Complaint regarding the details of Cornelius Heckstall's loan modification is in direct violation of the parties' Servicing Agreement.

36. As a direct and proximate result of ARE's breaches of the Servicing Agreement, GMACM has been damaged.

**<u>COUNT II</u>**
**(Unjust Enrichment)**

37. GMACM adopts and incorporates by reference all allegations made in Paragraphs 1-23 of this Counterclaim as if fully stated herein.

38. GMACM has conferred a benefit upon ARE by, among other things, servicing numerous ARE-owned mortgage loans and advancing funds and incurring expenses, on ARE's behalf, in connection with the servicing of said mortgage loans.

39. ARE has knowledge of this benefit and has accepted and retained said benefit.

40. ARE has wrongfully failed to pay for this benefit, and inequity would result if ARE is not required to pay for the benefit received.

**COUNT III**
**(Breach of the Implied Duty of Good Faith and Fair Dealing)**

41. GMACM adopts and incorporates by reference all allegations made in Paragraphs 1-23 of this Counterclaim as if fully stated herein.

42. The parties' Servicing Agreement is/was a valid and binding contract by and between GMACM and ARE.

43. ARE has breached the implied duty of good faith and fair dealing in connection with the Agreement by, among other things, failing and/or refusing to reimburse GMACM for expenses incurred and advances made in connection with the servicing of the mortgage loans subject to the Agreement.

44. Said advances and expenses include, but are not limited to, funds provided for property inspections, property taxes, insurance, Broker Price Opinions, securing and un-securing properties, snow services, foreclosure fees and services, lawn cuts and yard maintenance, utilities, and litigation expenses.

45. ARE has breached the implied duty of good faith and fair dealing by failing to timely provide GMACM with a successor servicer after termination of the parties' relationship.

46. ARE has further breached the implied duty of good faith and fair dealing by continually neglecting its obligations under the Servicing Agreement.

47. ARE has also breached the implied duty of good faith and fair dealing by disclosing and disseminating confidential customer information regarding Cornelius Heckstall's mortgage loan – a customer and loan subject to the parties' Agreement. Specifically, in a recent press release, ARE alleged that "GMAC pressured the company to offer a second modification to

Cornelius Heckstall, despite the fact that he had failed to make payments according to an earlier loan modification with identical terms." (Exh. C). In said press release, Jeffrey Kirsch, president and CEO of ARE, went on to state that "[w]hile GMAC repeatedly neglected the assets in our portfolio, they appeared to bend over backwards for Rep. Heckstall's brother[;] [w]e bowed to the pressure because it gave us more time to find a competent replacement servicing company." (Exh. C).

48. Furthermore, ARE's inclusion of allegations in its Complaint regarding the details of Cornelius Heckstall's loan modification constitutes a breach of the implied duty of good faith and fair dealing.

49. As a result of said breaches, GMACM has been damaged.

**COUNT IV**
**(Defamation)**

50. GMACM adopts and incorporates by reference all allegations made in Paragraphs 1-23 of this Counterclaim as if fully stated herein.

51. Subsequent to GMACM's transfer of the mortgage loans encompassed by the parties' Servicing Agreement, ARE has made and published to third parties numerous false statements regarding GMACM.

52. Said false statements include, but are not limited to, statements that GMACM systematically mismanaged loans and properties in ARE's portfolio, failed to complete the simplest activities required of mortgage servicing companies, disregarded ARE's instructions, ignored ARE's requests for reports, and jeopardized ARE's assets.

53. As a result of ARE's conduct, GMACM has been damaged.

**COUNT V**
**(Conversion)**

54. GMACM adopts and incorporates by reference all allegations made in Paragraphs 1-23 of this Counterclaim as if fully stated herein.

55. ARE has unlawfully and wrongfully exercised dominion and control over GMACM's funds by, among other things, failing to reimburse GMACM for expenses incurred and advances made in connection with the servicing of the mortgage loans subject to the Agreement.

56. Said advances and expenses include, but are not limited to, funds provided for property inspections, property taxes, insurance, Broker Price Opinions, securing and un-securing properties, snow services, foreclosure fees and services, lawn cuts and yard maintenance, utilities, and litigation expenses.

57. GMACM has the exclusive right to the above-referenced funds, and ARE has deprived GMACM of the use and possession of said funds.

58. As a result of ARE's conduct, GMACM has been damaged.

**COUNT VI**
**(Application for Injunctive Relief)**

59. GMACM adopts and incorporates by reference all allegations made in Paragraphs 1-23 of this Counterclaim as if fully stated herein.

60. Subsequent to GMACM's transfer of the mortgage loans encompassed by the parties' Servicing Agreement, ARE has been disclosing and disseminating confidential customer information regarding Cornelius Heckstall's mortgage loan – a customer and loan subject to the parties' Agreement. Specifically, in a recent press release, ARE alleged that "GMAC pressured the company to offer a second modification to Cornelius Heckstall, despite the fact that he had

failed to make payments according to an earlier loan modification with identical terms." (Exh. C). In said press release, Jeffrey Kirsch, president and CEO of ARE, went on to state that "[w]hile GMAC repeatedly neglected the assets in our portfolio, they appeared to bend over backwards for Rep. Heckstall's brother[;] [w]e bowed to the pressure because it gave us more time to find a competent replacement servicing company." (Exh. C).

61. Should ARE not be enjoined from disseminating and disclosing such confidential customer information, GMACM will be immediately and irreparably harmed and will be exposed to liability from third parties.

62. Furthermore, there is a substantial likelihood GMACM will succeed on the merits, and GMACM has no adequate remedy at law.

63. Indeed, pursuant to the parties' Servicing Agreement, ARE specifically contracted that, in the event it disclosed any such information, said conduct would "result in immediate and irreparable harm and that any remedies at law . . . [would] be inadequate." (Exh. 1 to Doc. 4, § 13.05).

64. ARE further agreed that, in the event of such conduct, GMACM shall have "the right to obtain injunctive relief to restrain such disclosure or use." (Exh. 1 to Doc. 4, § 13.05).

65. In light of the foregoing, GMACM requests that this Court issue both a preliminary and permanent injunction, enjoining ARE, and its agents, officers, directors, employees, servants, attorneys, and/or anyone acting in concert or participation therewith, from disclosing or disseminating to any third party any information relating in any way to customers and/or loans covered under the parties' Servicing Agreement, including but not limited to, information pertaining to Cornelius Heckstall's loan modification.

66. GMACM further requests that this Court compel ARE to issue an appropriate retraction of all of its statements to third parties and media outlets pertaining to customers and/or loans covered under the parties' Servicing Agreement, including, but not limited to, its statements pertaining to Cornelius Heckstall's loan modification.

**WHEREFORE**, Defendant/Counterclaim Plaintiff GMACM demands

(a) judgment in its favor and against Plaintiff/Counterclaim Defendant ARE for compensatory damages, pre-judgment and post-judgment interest, attorneys' fees and costs;

(b) both a preliminary and permanent injunction, enjoining ARE, and its agents, officers, directors, employees, servants, attorneys, and/or anyone acting in concert or participation therewith, from disclosing or disseminating to any third party any information relating in any way to customers and/or loans covered under the parties' Servicing Agreement, including but not limited to, information pertaining to Cornelius Heckstall's loan modification;

(c) an order compelling ARE to issue an appropriate retraction of all of its statements to third parties and media outlets pertaining to customers and/or loans covered under the parties' Servicing Agreement, including, but not limited to, its statements pertaining to Cornelius Heckstall's loan modification; and

(d) any such other and further relief as this Court deems proper

Dated: July 8, 2010

/s/ D. Brian O'Dell
D. Brian O'Dell (Bar No. 0659665)
Ann T. Taylor (Bar No. 0037228)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6318
bodell@babc.com
ataylor@babc.com

ATTORNEYS FOR DEFENDANT/COUNTERCLAIM PLAINTIFF
GMAC MORTGAGE, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of July, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Alan Rosenthal
Natalie J. Carlos
Carlton Fields, P.A.
Suite 4200
Miami Tower
100 S.E. Second Street
Miami, FL 33131

/s/ D. Brian O'Dell
OF COUNSEL

**GMAC Mortgage** SUBSERVICING

April 20, 2009

American Residential Equities, LLC
Attention: Mr. Jeffrey Kirsch
848 Brickell Ave.
Miami, FL 33131

Re: Servicing Agreement (the "Servicing Agreement") dated as of July 29, 2004 by and between American Residential Equities LLC. ("ARE") and GMAC Mortgage Corporation (n/k/a GMAC Mortgage, LLC)("GMACM"), as amended.

Dear Mr. Kirsch:

Pursuant to Section 6.01(c) of the above referenced Servicing Agreement, please accept this letter as notification that GMACM intends to terminate the Servicing Agreement effective the earlier of (i) July 31, 2009 or (ii) such other date as ARE notifies GMACM that a successor servicer has assumed GMACM's responsibilities and obligations.

If you have any questions regarding this notice, please do not hesitate to contact me at 215-734-5368.

Sincerely,

Lynne Gentner

Lynne Gentner
Client Relations Manager

Business Development
Enterprise Servicing Group
3451 Hammond Avenue
Waterloo, IA 50702

Toll Free: (877) 300-4622
www.gmacsolutions.com

EXHIBIT
tabbies
A

**GMAC Mortgage** SUBSERVICING

May 1, 2009

American Residential Equities, LLC
Attention: Mr. Jeffrey Kirsch
848 Brickell Ave.
Miami, FL 33131

Re: Servicing Agreement (the "Servicing Agreement") dated as of July 29, 2004 by and between American Residential Equities LLC. ("ARE") and GMAC Mortgage Corporation (n/k/a GMAC Mortgage, LLC)("GMACM"), as amended.

Dear Mr. Kirsch:

*This letter supersedes our letter dated April 20, 2009.* Pursuant to Section 6.01(c) of the above referenced Servicing Agreement, please accept this letter as notification that GMACM intends to terminate the Servicing Agreement effective the earlier of (i) November 30, 2009 or (ii) such other date as ARE notifies GMACM that a successor servicer has assumed GMACM's responsibilities and obligations.

If you have any questions regarding this notice, please do not hesitate to contact me at 215-734-5368.

Sincerely,

Lynne Gentner

Lynne Gentner
Client Relations Manager

Business Development
Enterprise Servicing Group
3451 Hammond Avenue
Waterloo, IA 50702

Toll Free: (877) 300-4622
www.gmacsolutions.com

EXHIBIT
tabbies
B

StreetInsider.com
*if you're not inside...you're outside*

Open and fund an account today. If in 60 days you don't agree
GET YOUR MONEY BACK*
OPEN AN ACCOUNT
*Includes platform and data fees, and commissions; excludes exchange clearing charges. Other restrictions apply. Offer is not a guarantee against trading losses.
TradeStation Securities
Trade Smart. Trade Up. TradeStation.

investools

Join Free SI Premium RSS Feeds E-mail Alerts Portfolio Login

Top News

Stocks Seek Third Straight Up Day After Better Jobless Report

BP (BP) Sets Aggressive July 27th Target To Stop Gushing Gulf Well

IMF Lifts 2010 Growth Forecast

Market Snapshot

Nasdaq S&P 500 NYSE




| | | |
|---|---|---|
| Nasdaq +12.23 | 2171.70 | (+0.57%) |
| S&P 500 +6.92 | 1067.19 | (+0.65%) |
| NYSE +46.10 | 6731.88 | (+0.69%) |

Quotes delayed at least 20 mins.

Advertisement

FREE SI Alerts On Twitter>>>
FREE SI Newsletter>>>

3.12% Mortgage Loans
No Hidden Fees.
Refi & Save Now!
Fast Free Quotes -
No Credit Check
MortgageLoans.LoanRe

Ads by Google

CEO Wealthmeter



+213.13M (+0.66%)
Holdings: 30.49B
Salary: 38.62K

Lawrence J. Ellison Oracle Corporation
ORCL | News | Chart | Profile



+201.02M (+1.54%)
Holdings: 12.02B
Salary: 81.84K

Jeffrey P. Bezos Amazon.com Inc
AMZN | News | Chart | Profile



+52.84M (+1.44%)
Holdings: 2.91B
Salary: 82.31M

Michael S. Dell Dell Computer Corporation
DELL | News | Chart | Profile

+22.14M (+0.45%)
Holdings: 6.67B

Font Size: Increase Decrease Send to a Friend

Provided by: Try Investools for free*

## Press Releases

# American Residential Equities Sues GMAC Mortgage for Mismanaged Loan Servicing

June 15, 2010 4:37 PM EDT

**Alleges Georgia Elected Official, GMAC Pressured Company for Favorable Treatment**

MIAMI--(BUSINESS WIRE)-- American Residential Equities, LLC, a Miami-based real estate company that buys and liquidates pools of non-performing residential mortgages, today announced that it has filed a lawsuit against GMAC Mortgage Corporation, one of the largest residential mortgage servicers in the nation. The suit, filed in the Southern District of Florida, alleges that GMAC failed to properly service mortgages and REO properties owned by ARE. In addition, ARE says in the lawsuit that it was pressured by GMAC into offering preferential treatment and a loan modification to Georgia State Rep. Joe Heckstall's brother, Cornelius Heckstall.

For the past year, ARE has been working to arrange an orderly transfer of the servicing responsibilities for its loans away from GMAC. The company has since learned that GMAC allegedly failed to properly service a number of ARE mortgage loans and REO properties, at great detriment to ARE.

"In violation of our agreement, GMAC has systematically mismanaged hundreds of loans and properties in our portfolio," said Jeffrey Kirsch, president and CEO of ARE. "Not only did they fail to complete the simplest activities required of all mortgages services companies, but they repeatedly disregarded our instructions, ignored our requests for reports and jeopardized our assets."

In addition, GMAC has refused ARE's requests to audit its books and records. The suit alleges that GMAC failed to maintain properties, subjecting them to weather damage, vandalism and government fines. In other cases, properties were over-insured while timely insurance claims were not filed for other mortgaged properties.

According to the lawsuit, Rep. Heckstall contacted GMAC on behalf of his brother and requested that his mortgage be modified a second time. ARE contends that GMAC pressured the company to offer a second mortgage modification to Cornelius Heckstall, despite the fact that he had failed to make payments according to an earlier loan modification with identical terms.

"While GMAC repeatedly neglected the assets in our portfolio, they appeared to bend over backwards for Rep. Heckstall's brother," said Kirsch. "We bowed to the pressure because it gave us more time to find a competent replacement servicing company."

American Residential Equities specializes in acquiring, managing, and liquidating undervalued first mortgage loans. The company is a leader in the resolution of delinquent single-family mortgage loans across the United States. Additional information about ARE is available at www.arenow.com or by calling (305) 577-1011.

**For American Residential Equities**, LLCDavid PR GroupJohn P. David, 305-255-0035john@davidpr.com

Source: American Residential Equities, LLC

## Stocks Mentioned

## Related Entities

- GMAC
- Life, Style and Real Estate

EXHIBIT

tabbies

C

Sprint
Download all your info on the go, up to 10x faster than 3G.
Overdrive™ 3G/4G Mobile Hotspot
Get it now
4G available in over 30 markets and counting.
Replay



Sprint
Download all your info on the go, up to 10x faster than 3G.
Overdrive™ 3G/4G Mobile Hotspot
Get it now
4G available in over 30 markets and counting.
Replay



## More News related to Press Releases

- Twitpay Unveils Political Donation Feature for RT2Give
- Toll Brothers Named #1 In The Industry In Fortune Magazine's World's Most Admired Companies 2010 Survey
- The Design People, Inc. North America Appoints Luigi Amante as President
- Globoforce to Present with Biogen Idec at IHRIM's 2010 Global Forum
- DNV Healthcare Inc. Expands to New Administrative Headquarters for US Hospital Accreditation Services

More News related to Press Releases



Salary: Unknown

Eric Schmidt Google
GOOG | News | Chart | Profile



+16.86M (+0.33%)
Holdings: 10.01B
Salary: 758.81K

Steven A. Ballmer Microsoft Corporation
MSFT | News | Chart | Profile



+9.14M (+1.64%)
Holdings: 321.83M
Salary: Unknown

Carl H. Linder Chiquita Brands International Inc
CQB | News | Chart | Profile

More CEO Wealthmeter




## Read More On:

powered by Kosmix

- Biogen Idec
- Loan Servicing
- DNV Healthcare
- Toll Brothers
- Equities
- Hospital Accreditation

### Add Your Comment

Name

Subject

Body

Add Your Comment

Partner Center

Free Sign Up For Free Alerts &
learn more

$0 Stock Trades
learn more

THE WALL STREET JOURNAL
learn more

Northeastern
learn more

## Sign up for StreetInsider Free!

Receive full access to all new and archived articles, unlimited portfolio tracking, e-mail alerts, custom newswires and RSS feeds - and more!

E-mail Address Go!

**Follow StreetInsider.com On Twitter**

Resources:
Forex Account
Payday loan

Free Trial!
Signup for StreetInsider Premium Today!

Sponsored Links

2010 #1 Energy Stock Pick
AEGY Announces Dividend - 3 for 1 stock split! Massive gains expected!
www.EnergyStockReports.com

Ditech® Official Site
Fast & Friendly Service. Apply Online and Start Saving Today!
www.Ditech.com

Refinance Now 4.0% FIXED!
$160,000 Mortgage for $633/mo. Free. No Obligation. Get 4 Quotes!
Mortgage.LendGo.com

Buy a link here

Get Quote

Home Member's Home Premium Content
Links Entities About StreetInsider Get Our Content
Advertise with Us Contact Us Disclaimer Privacy Policy

© Copyright 2010 StreetInsider.com
Custom Website Design by Active Media Architects

Free News Feed
Get our RSS Feed!